1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| GLENN LIOU,<br><br>                                    Plaintiff,<br><br>v.<br><br>ORGANIFI, LLC et al.,<br><br>                                    Defendants. | Case No.:  20-cv-1077-CAB-DEB<br><br>**ORDER RE: DEFENDANTS'<br>MOTION TO DISMISS THE<br>SECOND AMENDED COMPLAINT<br>AND MOTION TO COMPEL<br>ARBITRATION**<br><br>[Doc. Nos. 23, 24] |

18
19
20
21
22
23
24
25
26
27
28

        This matter is before the Court on Defendants Organifi, LLC's and Andrew Canole's motion to dismiss the Second Amended Complaint [Doc. No. 23] and motion to compel arbitration of Plaintiff's claims and stay litigation pending the outcome of arbitration [Doc. No. 24].  Both motions have been fully briefed and the Court finds both suitable for determination on the papers submitted and without oral argument.  *See* CivLR 7.1(d)(1). For the reasons set forth below, Defendants' motion to compel arbitration is **DENIED**, and Defendants' motion to dismiss is **GRANTED in part and DENIED in part**.

### I.     BACKGROUND

        Plaintiff Glenn Liou filed this putative consumer class action complaint against Defendants Organifi, LLC and Andrew Canole in San Diego Superior Court on August 30,

2019.  [Doc. No. 1-2.]  Plaintiff then filed a First Amended Complaint ("FAC") on January 6, 2020.  [Doc. Nos. 1-3, 1-4].  The FAC asserted five claims under California law based on Organifi's allegedly false and misleading statements about its product Organifi Green Juice ("Green Juice" or "Product"): (1) Breach of Implied Warranties of Merchantability and Fitness for Particular Purpose; (2) Breach of Express Warranty; (3) Violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*; (4) Violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq.*; and (5) Restitution, Money Had and Received, Unjust Enrichment, and/or Quasi-Contract and Assumpsit.  [*Id.*]

Defendants removed the action to this Court on June 12, 2020.  [Doc. No. 1.]  After removal, Defendants filed a motion to dismiss the FAC, while Plaintiff filed a motion to remand the action to state court.  [Doc. Nos. 3, 4.]  The Court denied the motion to remand and granted the motion to dismiss with respect to Plaintiff's breach of the implied warranty of merchantability claim, CLRA and UCL claims premised solely on Defendants' Benefit Statements,[1] and request for injunctive relief, and denied it otherwise.  [Doc. Nos. 10, 14.] As permitted by the Court's order on the motion to dismiss, Plaintiff filed a Second Amended Complaint ("SAC") on October 22, 2020, asserting the same five claims.  [Doc. No. 15.]  Defendants now move to dismiss the SAC [Doc. No. 23] or to compel arbitration [Doc. No. 24].

As for the motion to compel arbitration, Defendants contend that by making a purchase on www.organifishop.com, Plaintiff agreed to certain Terms & Conditions (hereinafter "T&C") linked on the site.  [Doc. No. 24-1 at 7.]  According to Defendants, these T&C include a valid and binding arbitration agreement that encompasses the present dispute and requires the Court to compel Plaintiff to arbitrate his claims.  [*Id.*]

---

[1] The term "Benefit Statements" refers to the twenty statements Defendants made relating to Green Juice's alleged benefits that Plaintiff claims are false or misleading.  [Doc. No. 1-3 ¶ 31(a)-(t); Doc. No. 15 ¶ 32(a)-(t).]

As for the motion to dismiss, Defendants generally argue that the SAC does not remedy the defects articulated by the Court in its order dismissing some of the FAC's claims and asks the Court to dismiss those claims with prejudice.  Because an order granting the motion to compel arbitration would moot the motion to dismiss the SAC, the Court will address the motion to compel arbitration first.

## II.   ORDER ON MOTION TO COMPEL ARBITRATION

### a.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving commerce.  *See* 9 U.S.C. § 1 *et seq.*  The FAA makes such written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms."  *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (internal citation omitted).

Under the FAA, an aggrieved party to a written arbitration agreement "may petition any United States District Court . . . for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement."  9 U.S.C. § 4.  "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue."  *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).  Upon such a showing, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  The scope of an arbitration clause must be interpreted liberally, and "as a matter of federal law, any doubts concerning the scope of arbitrable disputes should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Accordingly, a motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

### b. DISCUSSION

Plaintiff alleges that on January 29, 2019, he placed an order for Green Juice on www.organifishop.com. [Doc. No. 1-3 at 9.]  Defendants allege that in order to complete the checkout process on www.organifishop.com, Plaintiff "agreed to Organifi's Terms and Conditions." [Doc. No. 24-1 at 7.]  Specifically, Defendants contend that directly below the "Complete Purchase" button on the checkout page of www.organifishop.com, a "click box" appears that states: "By purchasing, you are agreeing to Organifi's Terms & Conditions." [Doc. No. 24-2 ¶¶ 3-4.] Defendants also allege that there is a hyperlink below the "click box" titled "Terms of service" that directs the user to the T&C.  [*Id.*]  Plaintiff disagrees with Defendants' description of the checkout page, alleging that he "did not have to click any form of acknowledgment of the [T&C] before accessing the website or placing any order, did not see the [T&C], was not aware and did not agree to be bound by" the T&C.  [Doc. No. 28 at 8.]

The T&C that Defendants allege was linked on www.organifishop.com begins: "Welcome to www.organifi.com or www.fitlife.tv (each a 'Site'), an online website operated by Fit Life TV LLC, a Florida limited liability company ('FLT', 'We', 'Our', or 'Us')." [Doc. No. 30-2 at 2.]  The contract defines "FLT," "We," "Our," and "Us" to refer to Fit Life TV LLC (hereinafter "FLT") and makes no mention of the corporate entity Organifi, LLC or of Andrew Canole as parties to the contract.  The T&C, therefore, is a contract between FLT and any user of the two websites listed ("www.organifi.com or www.fitlife.tv").

Paragraph 16 of the T&C states:

Class Action Waiver and Arbitration.  THIS CLASS ACTION WAIVER AND ARBITRATION SECTION PROVIDES THAT ANY DISPUTE ARISING FROM THIS AGREEMENT MUST BE RESOLVED BY BINDING ARBITRATION, WHICH REPLACES THE RIGHT TO GO TO

4

COURT.  THIS SECTION PROHIBITS YOU FROM BRINGING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT, INCLUDING IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, AND PROHIBITS YOU FROM BRINGING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION.   IN ADDITION, THIS CLASS ACTION WAIVER AND ARBITRATION SECTION PROHIBITS YOUR ABILITY TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, AND PROHIBITS YOUR ABILITY TO BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION.  THE WAIVERS SET FORTH IN THIS SECTION INCLUDE ANY CLAIM THAT YOU MAY HAVE AGAINST FLT WITH RESPECT TO ANY THIRD PARTY SERVICE.  TO THE EXTENT A PROVIDER OF A THIRD PARTY SERVICE JOINS FLT IN ANY ACTION BETWEEN YOU AND SUCH PROVIDER, YOU AGREE THAT THIS SECTION SHALL APPLY TO ANY CLAIMS YOU MAY HAVE AGAINST FLT.  IF NOT FOR THIS CLASS ACTION WAIVER AND ARBITRATION SECTION, YOU MAY HAVE OTHERWISE HAD A RIGHT TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE ACTIONS) AND YOU AND FLT MAY OTHERWISE HAVE HAD A RIGHT TO BRING CLAIMS IN A COURT BEFORE A JUDGE OR JURY.  EXCEPT AS OTHERWISE PROVIDED BELOW, YOU WAIVE ANY OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL A DECISION.

The party filing a claim in arbitration must choose one of the following two arbitration administrators: American Arbitration Association; or JAMS/Endispute, both of which are independent from Us.  Any arbitration will be conducted under the rules of the selected arbitration administrator by an impartial third party chosen in accordance with the rules of the selected arbitration administrator and as provided herein. . . . Copies of the current rules of the arbitration administrators named above, and well as information about arbitration and arbitration fees, and instructions for initiating arbitration may be obtained by using the following contact information:

American Arbitration Association
1633 Broadway, 10th Floor, New York, NY 10019
Website: www.adr.org
Telephone: 800-778-7879

1
2
3

JAMS
1920 Main Street, Suite 300, Irvine, CA 92614
Website: www.jamsadr.com
Telephone: 800-352-5267.

4

5

6

7

8

[Doc. No. 30-2 at 8-9.]   Defendants argue that by making a purchase on www.organifishop.com, Plaintiff agreed to the T&C, and is therefore bound by the above class action waiver and arbitration agreement in Paragraph 16.  Defendants further argue that based on Paragraph 16, even the threshold issue of arbitrability must be decided by an arbitrator.

9

10

### i.   Defendants Are Not Party to the Terms & Conditions and Have No Contractual Right to Compel Arbitration

11

12

13

14

15

16

17

18

19

20

21

22

23

The FAA reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).   The right to compel arbitration is thus a contractual right that "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) ("An entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration.")).  Thus, while limited exceptions may exist under state contract law,[2] courts generally do not allow a non-signatory to a contract to invoke an arbitration agreement contained therein.  *See Kramer*, 705 F.3d at 1128 ("The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement.").

24

25

A fundamental rule of contract interpretation under California law is that contracts

26

27

28

---

[2] When analyzing the validity of a written agreement to arbitrate, federal courts "apply ordinary state-law principles that govern the formation of contracts."  *Int'l Brotherhood of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

20-cv-1077-CAB-DEB

should be construed as a whole. CAL. CIV. CODE § 1641. Construing all provisions of the contract together, the T&C appears to be an agreement between FLT (the website provider) and the consumer browsing the website hosted by FLT ("www.organifi.com or www.fitlife.tv") governing the terms and conditions of the consumer's use of the website. First, the beginning sentence of the T&C defines the terms "FLT," "We," "Our," and "Us," which are used throughout the contract, to refer to FLT. [Doc. No. 30-2 at 2.] The opening paragraph of the T&C then characterizes the contract as governing the use of the website operated by FLT: "These Terms & Conditions of Use (the 'Agreement') set forth the terms and conditions which govern Your use of the Site and apply to information We collect on this Site . . ." [*Id.*] Second, FLT is the only corporation named in the T&C that has a significant relationship to the contract's subject matter. The few provisions mentioning Organifi relate to the site visitor's use of the brand materials, intellectual property, and content hosted on the website operated by FLT (i.e., www.organifi.com).[3] Interpreting the contract as a whole, the Court finds that FLT is the drafting party to the T&C agreement, not Organifi, LLC.

Defendants argue that "We," "Our," and "Us" are "grammatically plural" words, so they cannot refer to just one entity (FLT). However, as Defendants point out, companies and entities are often referred to using the third person plural. This is demonstrated by the arbitration agreements at issue in several cases cited by Defendants. *See Kramer*, 705 F.3d at 1124 (quoting contract between the plaintiff and car dealership as "If either you or **we**

---

[3] The corporation "Organifi, LLC" is mentioned just once in the nine-page T&C, in the final sentence of the contract: "No products purchased from this site shall be resold without written permission from Organifi LLC." [Doc. No. 30-2 at 9.] The "Organifi" brand name appears in only four sections throughout the T&C: (1) In the first paragraph, referring to the Site's capabilities which include enabling users to "participate in programs promoting the Organifi and Fitlife.tv philosophy and practice" [*Id.* at 2]; (2) in section 5, governing the intellectual property and the "content, features and functionality" of the site [*Id.* at 5]; (3) in section 6.3, regarding the display, sale, or other use of Organifi or FLT licensed materials "[a]s part of Your use of the Site" [*Id.* at 6]; and (4) in section 8.3, disclaiming any warranties for products sold by other web storefronts [*Id.* at 7]. All these provisions relate to the site visitor's use of the brand materials, intellectual property, and content hosted on the website operated by FLT.

elect, any claims or disputes arising out of this transaction, or relating to it, will be determined by binding arbitration . . .") (emphasis added); *Miller v. Time Warner Cable*, No. 8:16-cv-00329-CAS (ASx), 2016 WL 7471302, at *2 (C.D. Cal. Dec. 27, 2016) (quoting Subscriber Agreement between the plaintiff and Time Warner Cable as ". . . any dispute, claim, or controversy between you and TWC regarding any aspect of your relationship with **us** or any conduct or failure to act on **our** part . . .") (emphasis added); *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 639 (2003) (quoting insurance policy between the plaintiff and the insurer as "**We** do not cover Bodily Injury or Property Damage . . . ") (emphasis added).  The use of the plural pronouns "We," "Our," and "Us" in the T&C thus does not preclude the possibility that such words refer to solely one business entity—FLT.  Nor does it necessarily mean that the plural refers to Organifi, LLC, which is not mentioned until the final sentence of the nine-page agreement.

Defendants further argue that Andrew Canole is entitled to invoke the arbitration clause and compel this matter to arbitration as a non-signatory to the T&C because he acts as an agent to and beneficiary of Organifi, LLC.  [Doc. No. 24-1 at 14-16.]  However, Defendants' argument is premised on the assumption that Organifi itself is a party to the T&C—which the Court finds that it is not.  Because the T&C is an agreement between the consumer and FLT, Mr. Canole and Organifi's relationship is irrelevant to this inquiry.

For the reasons discussed above, the Court finds that neither Organifi nor Andrew Canole is a party to the T&C.[4]  Accordingly, neither Defendant is entitled to invoke the T&C's class action waiver and arbitration provision, and no binding agreement to arbitrate

---

[4] The Court need not reach the issue of whether Plaintiff agreed to be bound by the T&C, as it is irrelevant to the present dispute.  Any potential contract would be between Plaintiff and FLT, and FLT is not a party to this case.

1  exists between the parties.[5]

2  ### ii.  The Parties Did Not Agree to Arbitrate Arbitrability

3  Defendants also argue that under Paragraph 16 of the T&C, the parties delegated the

4  threshold issue of whether they agreed to arbitrate their dispute to an arbitrator.

5  "The question of whether the parties have submitted a particular dispute to

6  arbitration, *i.e.*, the '*question of arbitrability*,' is an issue for judicial determination unless

7  the parties clearly and unmistakably provide otherwise."  *Howsam v. Dean Witter*

8  *Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis in original) (internal quotations omitted).

9  Defendants contend that Paragraph 16 "expressly incorporates the AAA and JAMS Rules,

10  which empower an arbitrator to decide threshold issues of arbitrability," and therefore

11  constitutes "clear and unmistakable evidence that contracting parties agreed to arbitrate

12  arbitrability."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).   However,

13  Defendants ignore a crucial aspect of the *Brennan* rule—the arbitration agreement must be

14  between *contracting* parties.  Defendants cannot assert a contractual right arising from a

15  contract to which they were not a party.[6]  *See DMS Servs., LLC v. Superior Court*, 140 Cal.

16  Rptr. 3d 896, 901 (2012) (noting that the "general rule [is] that one must be a party to an

---

[5] Even if Plaintiff and Defendants were parties to the T&C, the present dispute would likely not fall within the scope of the arbitration provision contained therein.  A party seeking to compel arbitration based on an agreement must show "that the agreement to arbitrate encompasses the dispute at issue."  *Ashbey*, 785 F.3d at 1323.  The T&C's arbitration provision states that "any dispute **arising from this agreement** must be resolved by binding arbitration."  [Doc. No. 30-2 at 8] (emphasis added).  As the Court previously explained, the T&C purports to govern the terms and conditions of using and accessing www.organifi.com and www.fitlife.tv.  Nothing in the T&C suggests that it relates to the quality of or statements made about the goods sold on either website.  Because Plaintiff's claims against Defendants arise out of Defendants' statements about Green Juice's efficacy, and not out of Plaintiff's use of the website operated by FLT, Defendants cannot show that the present dispute arises from the T&C.  Accordingly, any alleged agreement to arbitrate disputes arising out of the T&C would not encompass Plaintiff's claims in this case.

[6] The Supreme Court has recognized that "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement."  *Kramer*, 705 F.3d at 1128.  Under California law, a non-signatory may enforce the terms of an arbitration agreement in rare circumstances, such as when the non-signatory is a third-party beneficiary of the contract or an agent of a contracting party.  *See DMS Servs.*, 140 Cal. Rptr. 3d at 901.  Organifi does not raise any of these grounds for entitlement to enforce the T&C as a non-signatory.

arbitration agreement to invoke it or be bound by it").  Whether Paragraph 16 of the T&C designates jurisdiction to an arbitrator is thus irrelevant to this dispute, as the T&C does not involve Defendants.

### iii.   Defendants Waived Their Right to Compel Arbitration

Even if the parties were bound by the T&C and this dispute fell within the scope of the T&C's arbitration provision, the Court finds that Defendants nevertheless waived their right to compel arbitration in this matter.

The right to compel arbitration arises from a contract alleged to be between the parties, and like other contractual rights, can be waived.  *See United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) (citing *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758-59 (9th Cir. 1988)).  However, a waiver of a contractual right to arbitration is not favored, and "any party arguing waiver of arbitration bears a heavy burden of proof."  *Id.*  To establish waiver of the right to compel arbitration, a party must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."  *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (citing *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).  Defendants do not dispute that they had knowledge of their alleged right to compel arbitration with Plaintiff throughout this litigation.  Accordingly, the Court addresses only the latter two factors.

### 1.   Defendants Engaged in Acts Inconsistent with Their Alleged Right to Arbitration

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate."  *Martin*, 829 F.3d at 1125.  Instead, the Court must generally ask whether a party's actions "indicate a conscious decision . . . to seek judicial judgment on the merits of [the] arbitrable claims, which would be inconsistent with a right to arbitrate."  *Id.*  This element is satisfied when a party (1) "makes an intentional decision not to move to compel arbitration," *Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019), and (2) "chooses to delay his right to compel arbitration by

actively litigating his case to take advantage of being in federal court." *Martin*, 829 F.3d at 1125.  For example, "[s]eeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum." *Newirth*, 931 F.3d at 941.

Plaintiff filed this putative consumer class action complaint against Defendants in state court on August 30, 2019.  [Doc. No. 1-2.]  On October 29, 2019, Defendants filed a demurrer to Plaintiff's complaint [Doc. No. 24-1 at 7], and on January 6, 2020, Plaintiff filed the FAC in response.  [Doc. Nos. 1-3, 1-4.]  Plaintiff also served various discovery requests on Defendants in January 2020, and Defendants responded with objections to every request.  [Doc. Nos. 24-5, 24-6.]  The parties participated in a Case Management Conference on February 7, 2020.  [Doc. No. 28 at 9.]  Defendants then filed another demurrer to the FAC on February 14, 2020.  [Doc. No. 24-1 at 8.]  Due to delays stemming from the COVID-19 pandemic, the demurrer to the FAC was never heard in state court.

After removing the action to this Court in June 2020, Defendants filed a motion to dismiss the FAC, while Plaintiff filed a motion to remand the action to state court.  [Doc. Nos. 3, 4.]  The Court denied the motion to remand and granted the motion to dismiss in part.  [Doc. Nos. 10, 14.]  Plaintiff then filed the SAC on October 22, 2020.  [Doc. No. 15.]  Defendants subsequently filed a motion to dismiss the SAC [Doc. No. 23], as well as a motion to compel arbitration [Doc. No. 24].

Defendants have spent approximately fifteen months litigating this case from when Plaintiff filed his initial complaint in August 2019 until the filing of the present motion in November 2020.  Since removing the case to federal court, Defendants have spent approximately seven months litigating before raising their alleged right to compel arbitration, including defending against a motion to remand and bringing two motions to dismiss.  "When we have granted motions to compel filed after substantial litigation, there have been unique circumstances that have explained the long delay in filing a motion to compel, such as absence of knowledge, a party's pro se status, or intervening law." *Martin*, 829 F.3d at 1127 n.5.  Defendants have presented no such evidence of unique

circumstances here.

Additionally, Defendants have actively litigated this case by filing four separate motions to dismiss Plaintiff's claims between state and federal court.  While in state court, Defendants filed two demurrers to Plaintiff's complaint and FAC, respectively.  [Doc. No. 24-1 at 7-8.]  After removal, Defendants then brought two additional motions to dismiss the FAC and the SAC.  [Doc. Nos. 3, 23.]  While "filing a motion to dismiss that does not address the merits of the case is not sufficient to constitute an inconsistent act," seeking a dismissal with prejudice, which is a ruling on the merits, may be so.  *See Martin*, 829 F.3d at 1126 n.4 ("When defendants move for dismissal with prejudice on a key merits issue that would preclude relief as to one or more of plaintiffs' claims, as they did here, they are seeking a ruling on the merits.").  Defendants have twice moved for this Court to dismiss Plaintiff's claims with prejudice and sought rulings on key merits issues, such as whether Plaintiff's CLRA and UCL claims are preempted by federal law.[7]  Although Defendants both "served pure objections" [Doc. No. 24-1 at 23] to Plaintiff's discovery requests in state court, objecting to one set of discovery requests while simultaneously filing multiple motions to dismiss hardly suggests "a decision to [not] take advantage of the judicial forum."  *Newirth*, 931 F.3d at 941.

In *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1413 (9th Cir. 1990), the Ninth Circuit held that a defendant's efforts to resist discovery requests, pursue a court-appointed attorney and apply for in forma pauperis status reflected only a "determination to avoid or frustrate the litigation."  Defendants' actions here, on the other hand, are more akin to a "strategic decision to actually litigate."  *Newirth*, 931 F.3d at 941.  Defendants have actively litigated this case for fifteen months, filed four separate motions to dismiss, and have not once raised their alleged right to arbitrate.  Based on this record, Defendants' conduct constitutes "an intentional decision to forgo arbitration in favor of a judicial

---

[7] Preemption is a "question of law, normally for a judge to decide."  *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).

forum" and merits a finding of acts inconsistent with any alleged right to compel arbitration.  *Id.* at 941-42.

## 2.  Plaintiff Was Prejudiced as a Result of Defendants' Actions

In order to establish prejudice, Plaintiff must show that "as a result of the defendants having delayed seeking arbitration, they have incurred costs that they would not otherwise have incurred, that they would be forced to relitigate an issue on the merits on which they have already prevailed in court, or that the defendants have received an advantage from litigating in federal court that they would not have received in arbitration." *Martin*, 829 F.3d at 1126 (internal citations omitted).  Prejudice is shown when "a party has expended considerable time and money due to the opposing party's failure to timely move for arbitration and is then deprived of the benefits for which it has paid by a belated motion to compel." *Id.* at 1127.

Plaintiff has been prejudiced by Defendants' actions throughout this litigation. Defendants attempted to take advantage of the federal judicial forum by seeking a ruling on the merits of Plaintiff's allegedly arbitrable claims, and only sought to compel arbitration once the Court ruled adversely to them on their first motion to dismiss.  *See Newirth*, 931 F.3d at 944 (finding prejudice to the plaintiff in similar circumstances). Defendants' fifteen-month delay required Plaintiff to expend significant time, resources, and effort to litigate this matter in both state and federal court.[8]  Moreover, if the parties were now compelled to arbitration, Plaintiff would be forced to "relitigate a key legal issue [on the merits] on which the district court has ruled in [his] favor"—i.e., whether Plaintiff's CLRA and UCL claims are preempted by federal law.  *See Martin*, 829 F.3d at 1128 ("We and other circuits routinely have found this factor dispositive because the plaintiffs would be prejudiced if the defendants got a mulligan on a legal issue it chose to litigate in court

---

[8] Throughout this litigation, Plaintiff has defended against several motions to dismiss, moved to remand to state court, "participat[ed] in futile mediations," and "prepar[ed] discovery . . . [including] providing nine extensions" to Defendants to respond to discovery requests.  [Doc. No. 28 at 17.]

1  and lost.").

2      As in *Martin*, where the Ninth Circuit found prejudice after defendants "failed to

3  move for arbitration for seventeen months [and] the plaintiffs expended considerable

4  money and effort in federal litigation," Plaintiff here would be prejudiced if he were forced

5  to arbitrate this case after fifteen months of time and money spent in court. *Martin*, 829

6  F.3d at 1127-28 ("The unnecessary, additional costs incurred by [Plaintiff] as a result of

7  the defendants' dilatory motion to compel constitutes obvious prejudice.").   Because

8  Defendants had knowledge of their alleged right to arbitrate and engaged in various acts

9  inconsistent with that right across fifteen months of litigation, and because Plaintiff would

10  suffer prejudice should the Court now compel arbitration, the Court finds that Defendants

11  waived any purported right to arbitrate the present dispute.

12      For the reasons set forth above, Defendants' motion to compel arbitration [Doc. No.

13  24] is **DENIED**.

14  **III.    ORDER ON MOTION TO DISMISS THE SECOND AMENDED**

15  **COMPLAINT**

16  **a. LEGAL STANDARD**

17      The familiar standards on a motion to dismiss apply here.  To survive a motion to

18  dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted

19  as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

20  662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus,

21  the Court "accept[s] factual allegations in the complaint as true and construe[s] the

22  pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire*

23  *& Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  On the other hand, the Court is

24  "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556

25  U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as

26  true allegations that contradict exhibits attached to the Complaint or matters properly

27  subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions

28  of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

(9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

## b. DISCUSSION

The Court previously dismissed Plaintiff's breach of implied warranty of merchantability claim, CLRA and UCL claims premised solely on Defendants' Benefit Statements, and request for injunctive relief, granting Plaintiff leave to amend his complaint. [Doc. No. 14.] Upon review of the SAC and Defendants' motion to dismiss, the Court finds that Plaintiff partially remedied the deficiencies identified in the Court's previous Order.

### i. Breach of Implied Warranty of Merchantability

The Court previously dismissed Plaintiff's breach of implied warranty claim in the FAC for failing to allege how Green Juice does not "provide[] for a minimum level of quality" or "lacks even the most basic degree of fitness for ordinary use" as a juice product. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009). In the SAC, Plaintiff clarifies that Green Juice is not a juice, but rather is a nutritional supplement in the form of a "powder that is added to water or other liquids." [Doc. No. 15 ¶ 25.] Plaintiff further alleges that Green Juice does not "provide the basic promised benefits of a nutritional supplement" that is supported by independent clinical trials, "thus failing to meet a minimum level of quality that would reasonably be expected for such products."[9] [*Id.* ¶ 82.] Plaintiff's allegations are sufficient to state a claim to relief that is plausible on its face. Therefore, Defendant's motion to dismiss Plaintiff's breach of implied warranty of

---

[9] Plaintiff also alleges that Defendants breached the implied warranty of merchantability because Green Juice is "unable to be sold in and from California as a mislabeled and misbranded product." [Doc. No. 15 ¶ 82.] Whether Green Juice can be legally sold in California is an unresolved legal question, and for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Thus the Court disregards this allegation at the motion to dismiss stage.

merchantability claim is **DENIED**.

### ii. CLRA and UCL Claims Premised on Defendants' Benefit Statements

Plaintiff's CLRA and UCL claims in the FAC were dismissed to the extent that they were premised solely on Defendants' Benefit Statements. The Court found that such claims were "lack of substantiation" claims, which private litigants are prohibited from bringing under the CLRA or UCL. *See Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 133 Cal. Rptr. 2d 207, 213 (2003). The Court instructed Plaintiff that to sustain his CLRA and UCL claims based on the Benefit Statements, he must "point to direct evidence specifically showing why each of the twenty identified Benefit Statements are provably false." [Doc. No. 14 at 8.]

In the SAC, Plaintiff again presents the same twenty Benefit Statements as a basis for his CLRA and UCL claims. [Doc. No. 15 ¶ 32(a)-(t).] Plaintiff alleges that the Benefit Statements where Defendants claim that "Green Juice's effectiveness at treating certain conditions has been proven by third-party clinical trials or studies" are provably false because (1) there has only been one study of Green Juice conducted, not multiple; (2) the single study of Green Juice does not qualify as a "clinical trial"; (3) any other studies relied on by Defendants are of Green Juice's component ingredients, rather than studies of Green Juice itself; and (4) the eighteen clinical trials specifically referenced by Defendants in support of the Benefit Statements do not actually support Green Juice's efficacy. [*Id.* ¶¶ 33-50.] As for the Benefit Statements that claim to be based on "third party clinical trials"—specifically those identified in paragraph 32, sections (d), (p), (q), (r), (s), and (t), of the SAC—the Court finds that Plaintiff has remedied the defects identified in its prior order and may therefore proceed with his CLRA and UCL claims based on those statements. However, Plaintiff's claims arising out of the remaining Benefit Statements continue to suffer from the same issues previously identified by the Court, as Plaintiff has not presented any direct evidence of how such statements are provably false.

Accordingly, Defendant's motion to dismiss Plaintiff's CLRA and UCL claims

based solely on the Benefit Statements identified in ¶ 32(d) and ¶ 32(p)-(t) of the SAC is **DENIED**.  Plaintiff's CLRA and UCL claims premised solely on the Benefit Statements identified in ¶ 32(a)-(c) and ¶ 32(e)-(o) are **DISMISSED with prejudice** as lack of substantiation claims.

### iii.  Request for Injunctive Relief

Finally, Plaintiff's request for injunctive relief in the FAC was dismissed for lack of standing because Plaintiff did not allege a "sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal quotations omitted).  Specifically, Plaintiff failed to allege facts suggesting that he intends to purchase Green Juice again in the future, and thus failed to establish any threat of future harm as required to warrant injunctive relief.  [Doc. No. 14 at 12.]

In the SAC, Plaintiff alleges that:

> he continues to desire to improve his health and would order [Green Juice] or reformulated [Green Juice] in the future if, in fact, Defendants conducted truly independent clinical studies of the effectiveness of the Product or any reformulated Product, or disclosed other truthful information about the Products' component ingredients and/or scientific proof that correlated to the constituent product levels. . . . Given Defendants' ongoing business acts and practices, Plaintiff will be unable to rely on the Product's advertising or labeling in the future, and so will not purchase the product although he would like to.

[Doc. No. 15 ¶ 71.]  In sum, Plaintiff claims he would purchase Green Juice again if it were properly advertised or labeled.  This statement appears to contradict Plaintiff's earlier allegation that he "did not receive any of the claimed benefits of the Product" after consuming it.  [*Id.* ¶ 21.]  Nevertheless, Plaintiff has plausibly alleged that he would purchase Green Juice again with accurate labeling, despite the fact that he found the product ineffective.  Construing the SAC in the light most favorable to Plaintiff, the Court accepts Plaintiff's factual allegation on its face and thus will allow him to proceed with his claim for injunctive relief.  Accordingly, Defendants' motion to dismiss Plaintiff's claim for injunctive relief is **DENIED**.

As discussed above, the SAC remedies most of the deficiencies identified in the Court's order dismissing the FAC.[10]   Accordingly, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration is **DENIED**.  Defendants' motion to dismiss the SAC is **GRANTED in part and DENIED in part**.  Plaintiff's CLRA and UCL claims based solely on the fourteen Benefit Statements identified in ¶ 32(a)-(c) and ¶ 32(e)-(o) of the SAC are **DISMISSED WITH PREJUDICE**, and Defendants' motion to dismiss is **DENIED** as to all other claims at issue.  Defendants shall file an answer to the SAC on or before **February 26, 2021**.

It is **SO ORDERED**.

Dated:  February 8, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[10] As in their motion to dismiss the FAC, Defendants again argue that Plaintiff's CLRA and UCL claims should be dismissed under the primary jurisdiction doctrine.  [Doc. No. 23-1 at 13.]  The Court previously rejected this argument when considering the FAC [Doc. No. 14], and Defendants have presented no new grounds warranting reconsideration of the Court's prior ruling.